# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 30, 2012

No. 11-11136

Lyle W. Cayce
Clerk

JOHN E. GIBSON, In his Individual Capacity, doing business as John Gibson & Associates,

      Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF INSURANCE - DIVISION OF WORKERS' COMPENSATION; ROD BORDELON, Commissioner, Texas Department of Insurance, Division of Workers' Compensation, in His Official Capacity,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In February 2011 the Texas Department of Insurance issued a cease and desist letter to Appellant John Gibson, arguing that his use of the words "Texas" and "Workers' Comp" in the domain name of his website violated § 419.002 of the Texas Labor Code. Gibson filed a complaint in the Northern District of Texas, alleging that the statute was unconstitutional under the First, Fifth, and Fourteenth Amendments. The district court dismissed the complaint for failure

No. 11-11136

to state a claim.  For the following reasons, we AFFIRM in part and REVERSE in part.

## FACTS AND PROCEEDINGS

John Gibson is an attorney who represents plaintiffs in workers' compensation claims and contested cases in Texas.  Pursuant to this practice, Gibson maintains a website under the domain name of "texasworkerscomplaw.com" in which he discusses matters related to Texas workers' compensation law.  He also uses the website to advertise and disseminate information about his law practice.

On February 7, 2011, Gibson received a cease and desist letter from the Texas Department of Insurance, Division of Workers' Compensation ("DWC"), requesting that he no longer use the above-stated domain name.  The letter alleged that Gibson's website violated § 419.002 of the Texas Labor Code, which states:

a) Except as authorized by law, a person, in connection with any impersonation, advertisement, solicitation, business name, business activity, document, product, or service made or offered by the person regarding workers' compensation coverage or benefits, may not knowingly use or cause to be used:

(1) the words "Texas Department of Insurance," "Department of Insurance," "Texas Workers' Compensation," or "division of workers' compensation";

(2) any term using both "Texas" and "Workers' Compensation" or any term using both "Texas" and "Workers' Comp";

(3) the initials "T.D.I."; or

(4) any combination or variation of the words or initials, or any term deceptively similar to the words or initials, described by Subdivisions (1)-(3).

No. 11-11136

(b) A person subject to Subsection (a) may not knowingly use or cause to be used a word, term, or initials described by Subsection (a) alone or in conjunction with:

> (1) the state seal or a representation of the state seal;

> (2) a picture or map of this state; or

> (3) the official logo of the department or the division or a representation of the department's or division's logo.

Tex. Labor Code § 419.002. Although DWC's letter requested a response, Gibson did not provide any written response, nor did he request any form of procedural review from DWC.

Instead, Gibson filed the instant suit, alleging that the regulation violates various constitutional provisions including the First Amendment's guarantee of freedom of speech, the Fourteenth Amendment's guarantees of equal protection and due process, and the Fifth Amendment's prohibition on takings. Gibson sought declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983 as well as attorneys' fees pursuant to 42 U.S.C. § 1988. The district court dismissed Gibson's Fifth and Fourteenth Amendment claims under Federal Rule of Civil Procedure 12(b)(6), along with Gibson's First Amendment as-applied challenge. The district court declined to consider Gibson's First Amendment facial challenge. Gibson appealed.

## STANDARD OF REVIEW

This court reviews a district court's dismissal for failure to state a claim *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). A complaint will not survive a motion to dismiss unless it pleads sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations stated in the complaint must be enough to "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### *1. Gibson's First Amendment As-Applied Challenge*

The United States Supreme Court has recognized that commercial speech is protected by the First Amendment. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976). However, "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-63 (1980). Regulations on commercial speech are permissible as long as they satisfy the four-part test set forth in *Central Hudson*:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566. Before reaching the commercial speech analysis we must first dispose of two arguments put forward by Gibson in support of his allegation that the regulation at issue deserves a higher level of protection than that normally reserved for commercial speech.

First, Gibson argues that the regulation is not content-neutral, and therefore this court should evaluate the regulation under the test traditionally reserved for content-based discrimination. *See Turner Broad. Sys., Inc. v.*

No. 11-11136

*F.C.C.*, 512 U.S. 622, 642 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content . . . [but] regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny[.]").  Gibson's argument is unavailing.  Texas's law does not prohibit Gibson's use of his domain name because of the viewpoint it expresses, nor does it prohibit all speech relating to workers' compensation in Texas.  *See Hill v. Colorado*, 530 U.S. 703, 719, 722-23 (2000) (holding that a statute is content-netural when it "places no restrictions on – and clearly does not prohibit – either a particular viewpoint or any subject matter that may be discussed by a speaker").

Gibson nevertheless argues that the statute at issue amounts to content discrimination because the domain name is "inextricably intertwined" with the content of his website, which includes his views on the need for compensation law reform.  But Gibson cannot bootstrap this challenge into one of content discrimination simply by alleging that the content-neutral regulation has a secondary effect on speech that is outside the reach of the regulation.  *See id.* at 725 (holding that a statute prohibiting protestors within eight feet of an abortion clinic was constitutional because the statute was "not limited to those who oppose abortion . . . [it applies] to all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision.  That is the level of neutrality that the Constitution demands.").  Because the regulation at issue applies equally to all individuals regardless of their position or viewpoint, and because it does not prohibit all speech relating to workers' compensation in Texas, it does not amount to content discrimination.

Second, Gibson argues that this law places a prior restraint on speech because it operates as a "wholesale prohibition on the use of certain words[.]"

5

This argument is also unavailing. The Supreme Court has stated that laws aimed at prohibiting deceptive commercial speech are unlikely to implicate the prohibition on prior restraints. *Friedman v. Rogers*, 440 U.S. 1, 10 (1979). Moreover, there is a clear distinction, "solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 550 (1993). Prior restraints typically involve "administrative and judicial orders [such as temporary restraining orders and permanent injunctions] *forbidding* certain communications when issued in advance of the time that such communications are to occur[,]" or, in other words, laws which require a speaker "to obtain prior approval for any expressive activities." *Id.* at 550, 551 (emphasis in original) (citation and internal quotation marks omitted). Because the instant regulation instead "penalize[es] past speech," as opposed to "barring speech in the future," it is not a prior restraint under the precedent set by our case law. *Id.* at 553.

    *a.    Commercial speech*

This brings us to the crux of the question presented by Gibson: whether the district court erred in finding that the statute (a) prohibits commercial speech, and (b) is a valid prohibition of commercial speech under the test set forth in *Central Hudson*.

We agree with Gibson that his domain name and blog may do "more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). The domain name may nevertheless be considered commercial speech if (i) it is an advertisement of some form; (ii) it refers to a specific product; and (iii) the speaker has an economic motivation for the speech. *See id.* at 66-67. As with many new issues involving the Internet, the proper method of analysis to determine whether a domain name is commercial speech or a more vigorously protected form of speech is *res nova*. A domain name, which in itself could qualify as ordinary communicative speech, might qualify as

commercial speech if the website itself is used almost exclusively for commercial purposes. This is an issue we need not reach or decide in this appeal without a record of all of the surrounding facts and circumstances involving the website's domain name. As discussed in more detail below, even if the domain name amounts to commercial speech, Gibson has nevertheless stated a claim under the First Amendment. Therefore, we reverse and remand the case for further proceedings on that basis. But we also reserve to Gibson his right in those proceedings to argue for and adduce evidence in support of stronger protection of his domain name as ordinary, communicative speech, and not merely as commercial speech.

       *b.*      *Central Hudson analysis*

Even if we assume without deciding that the domain name is commercial speech, we must still evaluate whether the statute presents a valid restriction on commercial speech under the test set forth in *Central Hudson*. To answer this question, we first look to whether the speech restricted by the statute is "false, deceptive, or misleading[.]" *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977). If so, it is not entitled to First Amendment protection. *Id.* The Supreme Court and this circuit have distinguished between two types of misleading speech: that which is "inherently likely to deceive," and that which is only "potentially misleading." *Pub. Citizen, Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011) (citing *In re R.M.J.*, 455 U.S. 191, 202-03 (1982)). In order for speech to fall outside of the First Amendment's protection, the speech must either be "inherently likely to deceive," or "the record [must] indicate[] that a particular form or method of advertising has in fact been deceptive." *R.M.J.*, 455 U.S. at 202.

Appellees primarily argue that the Texas statute is constitutional because Gibson's domain name amounts to inherently misleading speech. In support of this proposition, they cite to a series of cases in which courts have held that

domain names that use trademarks to misidentify the source of a product are outside the reach of the First Amendment. The case law cited by Appellees, however, is unique to the field of trademark infringement, *see, e.g.*, *Coca-Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir. 2004), and does not necessarily extend to a case such as this one, where Texas is prohibiting Gibson from using words that are otherwise in the public domain.[1] Cases involving trademark infringement involve inherently deceptive speech because they contain a significant risk that an infringing party will freeload on the goodwill that has been created by the original trademark. *See Friedman*, 440 U.S. at 11-16. No such risk is present here. Texas has made no showing that its own talents and energy contributed to the creation of any goodwill in the name "texasworkerscomplaw.com." *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 533-34 (1987). Instead the regulation at issue is forward-thinking; intended to prohibit confusion for individuals seeking information from the government agency. It is not retrospective in the same way as most trademark litigation, which is generally intended to preserve the reputation that has been built upon a trade name. *See Friedman*, 440 U.S. at 11-16. Accordingly, the case law cited by Appellees is inapposite.

Other than cases involving trademarks, inherently deceptive speech has been found in essentially one other area: attorney solicitation of prospective

---

[1]      In most of the cases cited by Appellees the domain name was actually held not to be protected speech because it was not *expressive*, not because it was misleading. *See, e.g., Planned Parenthood Fed'n of Am. v. Bucci*, No. 97-cv-0629, 1997 WL 133313, at *10-11 (S.D.N.Y. Mar. 24, 1997); *Morrison & Foerster, LLP v. Wick*, 94 F.Supp. 2d 1125, 1135 (D. Colo. 2000); *Jews for Jesus v. Brodsky*, 993 F.Supp. 282, 286 n.1 (D.N.J. 1998). Here, in contrast, Gibson's domain name is expressive because it does more than simply mimic the state agency's website or identify a source of Texas Workers' Compensation Law. *See Planned Parenthood*, 1997 WL 133313, at *11. The domain name is intended to direct visitors to a forum for discussing workers' compensation laws and their potential reform, as well as to convey to visitors the message of Gibson's website as a whole. Accordingly, in the context of this case, the domain name is "'sufficiently imbued with the elements of communication'" to place it in the realm of expressive speech. *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000) (quoting *Spence v. Washington*, 418 U.S. 405, 409-10 (1974)).

clients. *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460-62 (1978). In *Ohralik*, the Court specifically noted that "[t]he substantive evils of [attorney] solicitation have been stated over the years in sweeping terms: stirring up litigation, assertion of fraudulent claims, debasing the legal profession, and potential harm to the solicited client in the form of overreaching, overcharging, underrepresentation, and misrepresentation." *Id.* at 461. Given the history of in-person solicitation, the Court was convinced that these risks were inherently likely to occur in future solicitations, and such solicitation could therefore be prohibited. *Id.*

The same risks are simply not attendant in the speech at issue here. First, there is no history upon which a court could conclude that speech covered by this statute, and domain names similar to the one at issue, are inherently deceptive.[2] While Texas fears that Gibson's domain name may confuse the public, there is no showing that the domain name is incapable of being viewed in a non-deceptive manner. *See Pub. Citizen*, 632 F.3d at 219. Second, there have been no factual findings to support an allegation that the domain name is actually deceptive. *See, e.g.*, *R.M.J.*, 455 U.S. at 202; *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir. 1994). Therefore, the domain name at issue is entitled to some First Amendment protection.

Although Texas cannot show that the domain name is inherently misleading, that is not the end of our inquiry. Under the *Central Hudson* test, commercial speech that is not inherently misleading may nevertheless be regulated as long as the regulation directly advances a substantial state interest,

---

[2]    Even though Gibson's blog may fall under the rubric of attorney solicitation, the cases considering attorney solicitation are nevertheless distinguishable because the infraction at issue in this case is not directly related to Gibson's practice as an attorney. The Texas Department of Insurance argues that Gibson has violated Texas law by creating confusion with the government agency, not by creating a "potential harm to the solicited client in the form of overreaching, overcharging, underrepresentation, and misrepresentation." *Ohralik*, 436 U.S. at 461. Therefore, the attorney solicitation cases are also inapposite.

9

and is no more extensive than necessary to serve that interest. *Cent. Hudson*, 447 U.S. at 563; *Pub. Citizen*, 632 F.3d at 218. The chosen regulation does not need to be the least restrictive method for achieving the government's goal. *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989); *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 409 n.9 (5th Cir. 2007). A statute cannot be justified "by mere speculation or conjecture," *Edenfield v. Fane*, 507 U.S. 761, 770 (1993), and a reviewing court is limited to a consideration of the reasons proffered by the state. *Pruett*, 499 F.3d at 410.

The court below found the law to be constitutional because its intent is to prevent misuse of the DWC's names and symbols. *Gibson v. Bordelon*, No. 5:11-CV-039-C, 2011 WL 7763787, at *4 (N.D. Tex. Oct. 31, 2011). However, Texas concedes that it has not yet compiled the record necessary to demonstrate satisfaction of the *Central Hudson* test as a matter of law. Although a factual record is not necessarily required for Texas to demonstrate that the regulation fits the *Central Hudson* test, *see Pub. Citizen*, 632 F.3d at 221 (noting that a party can satisfy the second and third prongs of the *Central Hudson* analysis with "'history, consensus, and simple common sense.'") (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)), the district court nevertheless erred by basing its decision on the legislative record without the benefit of briefing on this issue. *See Pruett*, 499 F.3d at 410 (holding that a reviewing court is limited to a "consider[ation of] . . . the reasons proffered by the state" in evaluating as-applied challenges to commercial speech regulations). Because Texas has made no serious attempt to justify this regulation as narrowly tailored to a substantial state interest, the district court's order dismissing Gibson's as-applied challenge was in error, and this case is remanded to allow Texas the opportunity to develop additional factual findings to support the statute's constitutionality.[3]

---

[3] Despite this holding we do not interpret section 419.002 as covering only deceptive commercial speech or interpret Gibson's domain name as misleading.

No. 11-11136

*2. Gibson's First Amendment Facial Challenge*

Gibson also alleges that the statute is facially unconstitutional. A movant may bring a facial constitutional challenge if "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The First Amendment also permits facial challenges based on overbreadth, meaning that the statute "may conceivably be applied unconstitutionally," even if the individual before the court is not himself harmed. *Fox*, 492 U.S. at 484.

We first note that the district court did not err in considering Gibson's as-applied challenge before reaching his facial challenge. *See id.* at 484-85 ("It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily – that is, before it is determined that the statute would be valid as applied."). Furthermore, facial challenges outside of the overbreadth context tend to be disfavored, as they rest on speculation and "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Here, Texas has made no showing that the statute is valid as applied to Gibson. Because courts should not "anticipate a question of constitutional law in advance of the necessity of deciding it," we hold that it is unnecessary to reach the merits of Gibson's facial challenge before a determination that the statute is valid as applied. *Id.* (citation and internal quotation marks omitted).

*3. Gibson's Challenges Under the Fifth and Fourteenth Amendments*

In addition to his First Amendment claims, Gibson also alleges that the Texas law is unconstitutional under the Fourteenth Amendment's guarantees of equal protection and due process, and under the Fifth Amendment's

prohibition of taking without just compensation. None of these allegations are meritorious.

### a.　Equal Protection

To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class[,]" *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted), or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Gibson makes no allegation that this law discriminates, either facially or in its application, against members of any protected class. Nor does he make any serious allegation that this law has been applied to him in a manner different from other similarly situated individuals.

Gibson instead argues that this law subjects him to controls not placed on similarly situated businesses or individuals. The mere fact that a law impacts different individuals in different ways does not subject it to constitutional challenge unless Gibson can show that Texas's law is so extreme as to lack a rational basis. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review . . . the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."). Unlike under Gibson's First Amendment challenge, Texas need not "articulate . . . the purpose or rationale supporting its classification[,]" as long as there is a "reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations and internal quotation marks omitted). It is clear from the text of the statute that Texas's law is intended to prevent individuals from masquerading as representatives of the DWC or distributing information that may be misconstrued as bearing an  endorsement of the DWC. Given the complex

nature of workers' compensation law and the risks that may result from the dissemination of misleading information in this area, Texas's law bears a rational relationship to a legitimate state interest. *See id.* at 320. Accordingly, we affirm the district court's dismissal of Gibson's equal protection claim.

### b.    *Due Process*

Gibson also alleges that § 419.002 deprives him of procedural due process because there is no means or procedure for hearing, and no possibility of appeal from a determination of a violation of that section.  Gibson admits that the regulation permits an affected party to provide a written response to the cease and desist letter, which he did not do.

The requirements of procedural due process are "flexible and call[] for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  At a minimum, due process requires that notice and an opportunity to be heard "be granted at a meaningful time and in a meaningful manner."  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation and internal quotation marks omitted).  And the ultimate requirements of due process are dependent on three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Gibson alleges that any guarantee of due process is illusory because Texas is permitted, under § 419.004, to assess a civil penalty of $5,000 for each violation.  But according to the terms of the cease and desist letter, Texas has not threatened to impose a civil penalty against Gibson, but rather an administrative penalty pursuant to

No. 11-11136

§ 415.021.[4]  Under that regulation, administrative penalties "may be assessed only after the person charged with an administrative violation has been given an opportunity for hearing under Subchapter C." Tex. Labor Code § 415.021; *see also* § 419.005 (stating that these requirements extend to penalties for violations of § 419.002).  Subchapter C states as follows:

> If an investigation by the division indicates that an administrative violation has occurred, the division shall notify the person alleged to have committed the violation in writing of:
>
> > (1) the charge;
> > (2) the proposed penalty;
> > (3) the right to consent to the charge and penalty; and
> > (4) the right to request a hearing
>
> Not later than the 20th day after the date on which notice is received the charged party shall:
>
> > (1) remit the amount of the penalty to the division or otherwise consent to the imposed sanction; or
> > (2) submit to the division a written request for a hearing
>
> On the request of the charged party or the commissioner, the State Office of Administrative Hearings shall set a hearing.  The hearing shall be conducted in the manner provided for a contested case under Tex. Gov't Code Ann. § 2001.001 *et. seq*.
>
> An order of the commissioner is subject to judicial review under the substantial evidence rule.

Tex. Labor Code § 419.031, *et. seq*.  Under the balancing test set forth in *Matthews v. Eldridge*, this procedural scheme is sufficient to guarantee Gibson due process of law.  While the private interests at issue are significant ($25,000

---

[4]    Section 419.004 requires the attorney general to bring an action in district court in Travis County to collect any civil penalty assessed under that statute.  Although Appellees did not expand on the applicability of this statute, this arguably gives the defendant notice and an opportunity to be heard prior to any deprivation, sufficient to satisfy the requirements of due process. *See Eldridge*, 424 U.S. at 332-35.

14

or more, depending on the extent of the violation), the procedures adequately safeguard against the risk of erroneous deprivations, especially given the availability of judicial review. This scheme gives Gibson sufficient notice and an opportunity to be heard prior to any deprivation, and it is difficult to determine any additional procedures that would further reduce his risk. *See Eldridge*, 424 U.S. at 332-35. Accordingly, we affirm the district court's dismissal of Gibson's due process claim.

     *c.*    *Takings*

Finally, Gibson cannot succeed on his Fifth Amendment takings challenge because his claim is not yet ripe for adjudication. A takings claim becomes ripe only when "(1) the relevant governmental unit has reached a final decision as to how the regulation will be applied . . . and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Severance v. Patterson*, 566 F.3d 490, 496 (5th Cir. 2009) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194 (1985). Because neither of these steps has occurred in the instant case, we affirm the district court's dismissal without prejudice of Gibson's takings claim.

## CONCLUSION

We affirm the district court's dismissal of Gibson's Fifth and Fourteenth Amendment claims. We also affirm the district court's ruling that the regulation at issue is content-neutral and does not amount to a prior restraint. We reverse the district court's finding that the law is constitutional as applied to Gibson, and remand to permit the parties to more fully develop the record on this issue.

No. 11-11136

REAVLEY, Circuit Judge, concurring only in the judgment to reverse:

The court entertains the First Amendment claim because it reads the Texas statute to prohibit deceptive commercial speech. I see nothing in the statute to justify that reading. The district court saw the word "misuse" in the heading as enough to read deception into the statutory language. I have difficulty with that and, then, with reading Gibson's domain name as "misuse" or as misleading.