# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2014

Lyle W. Cayce
Clerk

No. 12-11074

JON TIMOTHY CARMICHAEL, Individually and in their representative capacities in the Estate of JTC, deceased; TAMI CARMICHAEL, Individually and in their representative capacities in the Estate of JTC, deceased,

Plaintiffs - Appellants

v.

RONNIE GALBRAITH, President of the School Board of the Joshua Independent School District, in his Official Capacity; RAY DANE, Superintendent of the Joshua Independent School District, in his Official Capacity; KENNETH RANDALL WATTS, Individually; DAYTON BARRONE, Individually; WALTER STRICKLAND, Individually; ELIZABETH ROSATELLI, Individually; DAYTON BARONE, Individually,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-622

Before DAVIS, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:*

This case involves claims under Title IX of the Education Amendments of 1972, as codified at 20 U.S.C. § 1681, as well as equal-protection claims

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11074

brought under 42 U.S.C. § 1983 and state-law claims raised under 28 U.S.C. § 1367.[1] The Carmichaels appeal the district court's dismissal of their complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the reasons set forth below, we reverse in part and affirm in part.

## I.

The Carmichaels' son, Jon, was a thirteen-year-old student at Loftin Middle School, who committed suicide after allegedly being bullied by his fellow students.  The defendants-appellees are school officials who, according to the Carmichaels, demonstrated deliberate indifference to the bullying.

The Carmichaels' complaint alleges that Jon was bullied throughout "[t]he 2009-2010 school year."  According to the complaint, "[o]n numerous occasions, Jon was accosted by a group of boys in the locker room—oftentimes having his underwear removed—while Defendant Watts observed."  During "[t]he last of these incidents . . . just before Spring Break—a few days before Jon took his life," members of the football team "stripped [Jon] nude and tied him up" and "placed [Jon] into a trash can" while calling him "fag," "queer," and "homo."  As the complaint explains, "[a] number of students in the locker room observed this deplorable behavior," and one of these students "videotaped the attack and uploaded it to YouTube."  The harassment against Jon was, according to the complaint, "based on gender or gender-based stereotypes." Shortly thereafter, Jon committed suicide in March 2010.

The Carmichaels' complaint further alleges that numerous school officials were aware of and deliberately indifferent to the bullying, including numerous teachers, the bus driver, the school counselor, and other staff. Although the school district had policies in place for addressing bullying, those

---

[1] The Carmichaels also asserted a substantive-due-process claim that has been abandoned on appeal.

No. 12-11074

policies were allegedly ignored in Jon's case. One teacher, after being told by another teacher that she was concerned about the bullying, "essentially replied that 'boys will be boys' and told the teacher to leave it alone."

The district court dismissed the Carmichaels' claims on September 26, 2012, and the Carmichaels appealed.

## II.

This court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief may be granted.[2] Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The court must accept as true all facts the plaintiffs allege in support of the claim and must construe those allegations in the light most favorable to the plaintiffs.[3] If those allegations "state a claim to relief that is plausible on its face," the complaint is adequate and "will survive a motion to dismiss."[4]

## III.

As codified at 20 U.S.C. § 1681, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." This provision of Title IX may be enforced in a private lawsuit for monetary damages.[5]

---

[2] *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 233 (5th Cir. 2012).

[3] *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

[4] *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). We note that the Carmichaels' complaint, which names some defendants in their "individual capacities" and some in their "official capacities," does not make clear which claims are brought against which defendants. The relevant provision of Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals," as opposed to the institution that

3

No. 12-11074

According to the Carmichaels, the bullying experienced by Jon from 2009 to 2010 constituted a "severe, pervasive, and objectively offensive" pattern of student-on-student sexual harassment in violation of 20 U.S.C. § 1681 under *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999).

The district court rejected this argument based on its conclusion that, essentially, the sexual harassment alleged by the Carmichaels was not pervasive and the pervasive bullying alleged was not sexual harassment. That is, the district court agreed with the Carmichaels that "on one occasion," which was the incident in March 2010 where Jon was "stripped nude" and "videotaped" in the locker room shortly before Jon's suicide, "the harassers and bullies spoke words that had a sexual connotation." The district court was not persuaded, however, that the allegations in the complaint supported the inference that "all of the numerous instances of harassment and bullying alleged" were instances of sexual harassment. The district court therefore dismissed the Carmichaels' claim under 20 U.S.C. § 1681.

To the extent that the district court interpreted *Davis*, 526 U.S. at 650-54, to foreclose claims under 20 U.S.C. § 1681 based on "a single instance" of student-on-student sexual harassment, we agree with the district court's analysis. The Supreme Court explicitly limited Title IX claims based on student-on-student sexual harassment to encompass only "pervasive" and "widespread" conduct with the "systemic effect of denying the victim equal

---

receives the federal funds. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). We therefore assume for purposes of this appeal that the Carmichaels have brought their Title IX claim against the school district (through the official-capacity defendants) and not the individual-capacity defendants. When raising such a claim, "a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference." *Id.*

access to an educational program or activity."[6]  In that respect, we consider that the district court's reasoning was sound.

The district court failed to take note, however, of sexual-harassment allegations in the complaint that do satisfy Title IX's requirement of pervasiveness.  In addition to the videotaped incident, in which the football team "stripped [Jon] nude and tied him up," the complaint also refers to other "numerous occasions" on which "Jon was accosted by a group of boys in the locker room—oftentimes having his underwear removed—while Defendant Watts observed."  The complaint later refers collectively to these occurrences in the plural as "*incidents* of sexual assault."[7]  The district court did not analyze or even mention these portions of the Carmichaels' complaint.

The removal of a person's underwear without their consent on numerous occasions plausibly constitutes pervasive harassment of a sexual character.  Indeed, "depend[ing] on [the] constellation of surrounding circumstances, expectations, and relationships,"[8] uninvited contact with the private parts of either the victim's or harasser's body has often been held to constitute sexual harassment under Title IX.[9]  Moreover, it is irrelevant that both the victim and the harassers in the present case were male because, as we recognized in *Sanches v. Carrollton-Farmers Branch Independent School District*, 647 F.3d 156, 165 (5th Cir. 2011), it is settled law that "[s]ame-sex sexual harassment

---

[6] *Davis*, 526 U.S. at 652-54.

[7] Compl. ¶¶ 51, 61, 89 (Rec. Doc. 23) (emphasis added).

[8] *See Davis*, 526 U.S. at 651 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

[9] *See id.* at 633-34.  *See also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 85, 89-90 (2d Cir. 2011) (permitting such contact to serve as the basis for a claim under Title IX); *Trentadue v. Redmon*, 619 F.3d 648, 650, 653 (7th Cir. 2010) (describing such an incident in a Title IX case as sexual abuse, although affirming dismissal on other grounds); *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 442-43, 450 (6th Cir. 2009) (permitting a case to proceed under Title IX based on such contact between students).

is actionable under title IX." Depending on the evidence at trial or summary judgment, the series of incidents where Jon's underwear was forcibly removed could plausibly constitute "numerous acts of objectively offensive touching."[10] Such acts plausibly fall outside the list of simple "insults, banter, teasing, shoving, pushing, and gender-specific conduct" which are "understandable . . . in the school setting" and are not actionable under Title IX.[11]

We therefore reverse the district court's dismissal of the Carmichaels' Title IX claim on this narrow basis. We also note that the Carmichaels suggest in their complaint that Jon's harassers were motivated by animus related to "gender-based stereotypes." For the reasons set forth above, however, we have no need at the present time to address the applicability of decisions under Title VII, such as *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250-51 (1989), or *EEOC v. Boh Brothers Construction Co., LLC*, 731 F.3d 444, 453-57 (5th Cir. 2013) (en banc), to Title IX claims involving acts of harassment committed by students in middle school. We also need not address any of the other elements of the Carmichaels' Title IX claim, such as the adequacy of the school's responses to Jon's complaints,[12] because neither the district court's opinion nor the defendant-appellees' briefs in the present appeal have addressed those aspects of this case.

## IV.

We now turn to the equal-protection claims. The district court held that the equal-protection claims asserted against the defendants sued in their individual capacities should be dismissed because, among other reasons, those

---

[10] *See Davis*, 526 U.S. at 653-54.

[11] *See id.* at 651-52.

[12] *See Sanches*, 647 F.3d at 168; *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).

defendants were entitled to qualified immunity.  The Carmichaels challenge the district court's other reasons for dismissing the claims but they are silent regarding qualified immunity.  Accordingly, the Carmichaels have not shown reversible error.[13]

The Carmichaels also asserted equal-protection claims against several officers of the school district in their official capacities.  "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[14]  In other words, the complaint here asserted the equal-protection claims against the school district itself.  "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible," *i.e.*, the school district's policies and customs.[15]  And in this regard, the complaint is threadbare.  We hold that the facts alleged in the complaint are too scarce to make out a plausible claim that the school district is responsible for any sort of policy or custom resulting in the denial of equal protection.  The district court is therefore affirmed as to the equal-protection claims.

V.

After the district court dismissed the Carmichaels' federal-law claims, it then declined to exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3).[16]  Because we reverse the district court's dismissal of the Title IX claims, we likewise reverse dismissal of the state-law claims.

---

[13] *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("[T]he plaintiff has the burden to negate the [qualified-immunity] defense once properly raised.").

[14] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (internal quotation marks, alterations, and citation omitted).

[15] *Doe*, 153 F.3d at 215-16 (analyzing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)).

[16] *See Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

No. 12-11074

VI.

As explained above, the Carmichaels adequately allege a Title IX claim against the school district. Therefore, insofar as the district court dismissed that claim and declined to exercise supplemental jurisdiction over the state-law claims, the district court's judgment is REVERSED and REMANDED for further proceedings in accordance with this opinion. In all other respects, the district court's judgment is AFFIRMED.

REVERSED and REMANDED in part, and AFFIRMED in part.

No. 12-11074

JAMES L. DENNIS, Circuit Judge, adding additional reasons and concurring in the judgment:

Plaintiffs-appellants Jon Timothy and Tami Carmichael, on behalf of themselves and the estate of their deceased son, Jon Thomas Carmichael, who they claim committed suicide as a result of school bullying, allege in their complaint that school officials were deliberately indifferent to a pattern of sexual assault against Jon. Specifically, the Carmichaels allege that students forcibly removed Jon's underwear on numerous occasions and one time videotaped an incident in which they stripped Jon nude, tied him up, and placed him in a trash can while calling him a "fag," "queer," and "homo." I agree fully with the panel's conclusion that these allegations "plausibly constitute[] pervasive harassment of a sexual character." *Ante*, at 5. I thus join the panel's judgment reversing the district court's dismissal of the Title IX claim. However, I also join in reversing the district court for an additional reason urged by the Carmichaels and, as amicus curiae, the United States, which I write separately to explain.

In addition to the above-described bullying against Jon, the complaint further alleges that Jon was the victim of other "incessant bullying" that occurred in the school's hallways, in class, on the football field, and in the locker room. In the hallways, he was "bumped and hit almost every day." On the football field, he was pushed onto the ground "on an almost-daily basis." In the locker room, he was "frequently accosted." Other harassment included, on some occasions, students picking him up and putting him in garbage bins and, on other occasions, destroying his personal property. This harassment is not alleged to have been "bas[ed] on sex," 20 U.S.C. § 1681(a), in the sense that it involved bodily contact "of a sexual character." *Cf. ante*, at 5. It is, however, alleged to have been harassment that was "bas[ed] on sex" because it was

motivated by Jon's perceived failure to satisfy "gender-based stereotypes," specifically, that he was not sufficiently "masculine." *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 235, 250-51 (1989). Thus, the question is, when harassment against a student is motivated by that student's perceived failure to satisfy gender-based stereotypes, is such harassment "bas[ed] on sex" under Title IX?[1] The Carmichaels and the United States urge us to answer "yes."

The persuasive authority of which I am aware is uniform in suggesting that such harassment is indeed "bas[ed] on sex" in the meaning of the statute. Two of our sister circuits have stated, although one in an unpublished opinion and both with little analysis, and no circuit of which I am aware has said otherwise, that, under Title IX, harassment may be "bas[ed] on sex" when it is motivated by the victim's failure to satisfy his peers' pre-conceived gender stereotypes. *See Wolfe v. Fayettville, Ark. Sch. Dist.*, 648 F.3d 860, 867 (8th Cir. 2011) (stating that the plaintiff was required to prove that the "harasser intended to discriminate against him 'on the basis of sex,' meaning the harassment was motivated by either [his] gender or failure to conform with gender stereotypes"); *Doe v. East Haven Bd. of Educ.*, 200 F. App'x 46, 48 (2d Cir. 2006) (unpublished) (similar). A number of district courts have held the same. *See, e.g.*, *N.K. v. St. Mary's Springs Acad. of Fond Du Lac Wisc., Inc.*, 965 F. Supp. 2d 1025, 1034 (E.D. Wis. 2013); *Doe v. Brimfield Grade Sch.*, 552 F. Supp. 2d 816, 823 (C.D. Ill. 2008); *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 953 (S.D. Ind. 2007); *Theno v. Tonganoxie Unified Sch. Dist No. 464*, 377 F. Supp. 2d 952, 965 (D. Kan. 2005); *Howell v. N. Cent. Coll.*,

---

[1] In addition to the harassment being "bas[ed] on sex," an actionable Title IX claim requires the other elements to be met too, of course. *See generally Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).

No. 12-11074

320 F. Supp. 2d 717, 722 (N.D. Ill. 2004); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1092 (D. Minn. 2000).

Likewise, the U.S. Department of Education's Office for Civil Rights, which is charged with enforcing Title IX, agrees that

> gender-based harassment, including that predicated on sex-stereotyping, is covered by Title IX if it is sufficiently serious to deny or limit a student's ability to participate in or benefit from the program. Thus, it can be discrimination on the basis of sex to harass a student on the basis of the victim's failure to conform to stereotyped notions of masculinity and femininity.

U.S. DEP'T OF EDUC., OFFICE FOR CIVIL RIGHTS, REVISED SEXUAL HARASSMENT GUIDANCE: HARASSMENT OF STUDENTS BY SCHOOL EMPLOYEES, OTHER STUDENTS, OR THIRD PARTIES (2001); s*ee also Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 647-48 (1999) (turning to OCR guidance in construing Title IX); *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1015 n.20 (5th Cir. 1996) ("When interpreting title IX, we accord the OCR's interpretations appreciable deference."), *disapproved of on other grounds by Davis*, 526 U.S. at 637-38; *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 226 & n.8 (D. Conn. 2006).

I find additional support for this authority in the law of Title VII of the Civil Rights Act of 1964, which prohibits certain employment discrimination, including workplace harassment "because of . . . sex." 42 U.S.C. § 2000e-2. In construing Title IX's meaning of harassment "bas[ed] on sex," courts, including the Supreme Court and this court, frequently rely on case law construing Title VII's prohibition on workplace harassment "because of . . . sex." *See, e.g.*, *Franklin v. Gwinnet Cnty. Pub. Schs.,* 503 U.S. 60, 75 (1992) (relying on *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (Title VII case)); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1 (1999) (Thomas, J.,

dissenting) (citing *Franklin* and noting that the Supreme Court has "looked to its Title VII interpretations of discrimination in illuminating Title IX"); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) (relying on Title VII precedent to construe Title IX); *Lipsett v. Univ. of P. R.*, 864 F.2d 881, 897 (1st Cir. 1988) ("[T]he Title VII standard for proving discriminatory treatment should apply to claims of sex discrimination arising under Title IX.").

In that tradition, I now turn to this court's recent decision in *Equal Employment Opportunity Commission v. Boh Brothers Construction Co.*, 731 F.3d 444 (5th Cir. 2013) (en banc), which explicated the meaning of harassment "because of . . . sex" under Title VII and is highly relevant here. *Boh Brothers* involved a male manager harassing a male employee. Much of the manager's harassment originated from his learning that the employee used "Wet Ones," a moist, antibacterial wipe, rather than ordinary dry toilet paper, and the manager thought that such election was "kind of gay" and "feminine." *Id.* at 450. The manager called the employee a "'pu—y,' 'princess,' and 'fa—ot,' often 'two to three times a day.'" *Id.* at 449. Numerous times each week, when the employee "bent over to perform a task," the manager "approached him from behind and simulated anal intercourse with him." *Id.* The manager showed his penis to the employee not infrequently and once threatened to put his "d—ck" in the employee's mouth while the employee was sleeping. *Id.* at 449-50.

In holding that the manager's harassment was actionable under Title VII, we held that "a plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping," or, in other words, "with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes." *Id.* at 454, 456 (citing *Price Waterhouse*, *supra*). Thus, the EEOC, litigating the case on behalf of the employee, could—and did—"rely on evidence that [the manager] viewed

[the employee] as insufficiently masculine to prove its Title VII claim." *Id.* at 456. The evidence showed that the manager's harassment was motivated by a perception that the employee was not sufficiently masculine—*i.e.*, the employee "fell outside of [the manager's] manly-man stereotype"—and such harassment, as so motivated, constituted unlawful discrimination "because of . . . sex." *Id.* at 459.

For the same reasons Title VII prohibits harassment based on gender stereotypes at work, as we held in *Boh Brothers*, I think Title IX does the same for children at school. Title VII's prohibition on harassment because of sex is aimed at affording equal opportunity for workers to thrive in the marketplace based on their abilities and without respect to gender identity. Similarly, Title IX aims for equal educational opportunity. In both the workplace and school, tolerance of harassment for failure to satisfy gender stereotypes stifles the opportunity for success based on merit rather than gender identity characteristics unrelated to ability. I see no rational reason why severe harassment motivated by a failure to satisfy gender stereotypes should be unlawful when carried out against adult workers but permitted when targeted against children. In short, I see no reason for Title VII and Title IX to diverge with respect to the issue of whether severe harassment motivated by a failure to satisfy gender stereotypes is actionable. Thus, I join every court of which I am aware to have addressed the question and I would hold that, when severe, pervasive, and objectively offensive harassment is motivated by the victim's failure to satisfy gender stereotypes, it is "bas[ed] on sex" in the meaning of Title IX and, so long as the other requirements of a Title IX claim are satisfied, there is an actionable claim.

In conclusion, I join the majority in reversing the district court because the Carmichaels' complaint plausibly alleges actionable harassment of a

sexual nature involving bodily contact. And, I further join in reversing the district court because, in my view, the complaint also plausibly alleges actionable harassment that was motivated by Jon's perceived failure to satisfy gender-based stereotypes.