# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2024

Lyle W. Cayce
Clerk

———————

No. 23-11214

———————

Lonzie Hershner; Hersh-Fam Enterprises, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

The City of Dallas; Austin Levisay; Sondra Parker; Kelly Kaltenbacher; Elizabeth Lopez; David Hernandez; Sherry Swanson,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-1788

———————————————————————

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Hershner and Hershner-Fam Enterprises LLC ("Hershner") appeal the district court's dismissal of their claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). We conclude that Appellants fail to state a plausible claim. We Affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-11214

## I.

At this stage, we must accept the complaint's facts as true, and take only reasonable inferences from those facts in favor of Plaintiffs: Marty's Live is a bar that caters to "the male black gay community in Dallas." At an unknown date, a Marty's Live customer parked near the house of Sherry Swanson, who lives in the neighborhood of the bar. The complaint alleges that Swanson yelled at one of the bar's customers leaving his parked car and walking towards Marty's Live: "You gay people need to leave this community and stop parking near my house you f---ing ni---rs."

The complaint then ties Swanson to a Dallas city council member, Jesse Moreno, based on a photo of the two standing together at an unidentified occasion. And separately, the complaint alleges that both the Dallas Police Department and the Dallas Department of Code Compliance showed up at Marty's Live on several occasions, over the course of approximately one year, including "Juneteenth" weekend. On one occasion, in November of 2021, the Dallas Police entered Marty's Live, went behind the bar, and shined a flashlight through the liquor bottles.

The visits from the code compliance officers arose from anti-noise ordinance violations and reported noise complaints. The City of Dallas issued Marty's Live several code violations over the course of about one year for violating the anti-noise ordinance, illegal land use, failure to paint parking stripes in the parking lot, and a violation of the Dallas City Code section 51A-1.104 for not having a valid certificate of occupancy. And the Dallas Police sometimes patrol the area surrounding Marty's Live for traffic and liquor law violations.

On April 5, 2022, the City of Dallas denied Marty's Live a dance hall license. A letter from the City explains that the application was denied

2

because the City of Dallas requires a Specific Use Permit (SUP[1]) to operate a dance hall, and Marty's Live lacked such a permit.[2]

Based on these facts, Hershner, who owns and manages Marty's Live, sued the City of Dallas, three Dallas police officers (Austin Levisay, Sondra Parker, and Kelly Kaltenbacher), a Dallas Code Enforcement Officer (Elizabeth Lopez), a Dallas Code Inspector (David Hernandez), and a private individual (Sherry Swanson) for several claims based on both Texas and federal law. The essence of those claims is that "Dallas City Council, on behalf of Sherry Swanson, ordered the Dallas Police Department and the Dallas Department of Code Compliance to harass the Plaintiffs, and the patrons of Marty's Live on the basis of racial and sexual discrimination."

Defendants filed motions to dismiss, which the district court granted. This timely appeal followed.

## II.

We review orders on Rule 12(b)(6) motions to dismiss for failure to state a claim under the *de novo* standard of review. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021). Dismissal under Rule 12(b)(6) is proper when the complaint lacks sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim must allege "more than the mere possibility of misconduct." *Inclusive Communities Project, Inc. v. Lincoln Prop.*

---

[1] The letter incorrectly defined SUP as "special use permit" rather than "specific use permit" as it is defined in the Dallas City Code. *See* Dallas, Tex., Code § 51A-4.219.

[2] Marty's Live had previously held a dance hall license at this location. The City of Dallas requires that businesses apply for a new dance hall license each year. Hershner admits that Marty's Live was applying for a license. *See* Dallas City Code § 14-9.

*Co.*, 920 F.3d 890, 899 (5th Cir. 2019). Put another way, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. This Court has jurisdiction under 28 U.S.C. § 1331 to decide Hershner's federal claims and has jurisdiction under 28 U.S.C. § 1367 to decide Hershner's state-law claims.

## III.

For multiple reasons, Hershner fails to state a plausible claim.

## A.

Hershner claims that the district court disregarded well-pled facts and evidence when ruling on his motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). Not so. The district court considered each factual allegation in the complaint and expressly stated that it was taking all well-pled facts in the complaint as true, even those that were doubtful. Hershner makes only threadbare allegations and conclusory statements alleging a prejudicially motivated conspiracy. *Iqbal*, 556 U.S. at 681. The district court did not need to accept conclusory allegations. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (stating that when reviewing a Rule 12(b)(6) motion, "[w]hile the court must accept the facts in the complaint as true, it will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions") (internal quotation marks omitted).

## B.

Next, Hershner argues that the district court incorrectly dismissed each of his claims. In his complaint, he claims the Defendants defamed him and conspired to deprive him of equal protection of the laws under the Fourteenth Amendment, his freedom of association under the First Amendment, his right against unreasonable searches under the Fourth

4

No. 23-11214

Amendment, and finally his right against the government taking property for public use without just compensation under the Fifth Amendment.[3] He fails to state each of those claims for the reasons that follow.

**1.** Under Texas law, a defamation claim requires "the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice if the plaintiff was a public official or public figure, or negligence if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). The only statement alleged to be defamatory was directed to a customer of Marty's Live. It was not a statement about Marty's Live, and it was not directed at Hershner. Hershner cannot sue for statements not made against him. We need go no further.

Even if the statement made by Swanson, a private person, were defamatory, that it did not involve "action under color of state law, the first requisite of a section 1983 action," dooms the Section 1983 claim. *Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982) (overruled on other grounds); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy."). Without even an allegation that the defamatory statement involved state

---

[3] Private nuisance and invasion of privacy were alleged at the district court, but not appealed. Furthermore, the district court properly granted the City of Dallas's motion to dismiss the state law claims against the individual officers because the Texas Tort Claims Act (TTCA) § 101.106(e) waives the State's sovereign immunity for only the governmental unit if both the governmental unit and its employees are sued. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 223 (5th Cir. 2018) ("[A] plaintiff who sues under the TTCA must elect pursuant to § 101.106 of that act between suing a governmental unit and suing an employee of that unit. If the plaintiff sues both the governmental unit and any of its employees under the TTCA, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").

action, Hershner cannot maintain his Section 1983 claim against state officials.

**2.** Hershner's conspiracy claim fails, too. Hershner must "allege facts that suggest an agreement among the parties." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (evaluating a conspiracy claim under 42 U.S.C. § 1985(3)); *see also Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) ("This Court has repeatedly defined civil conspiracy as a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.") (internal quotation marks omitted). Hershner alleges no facts that raise a reasonable inference of an agreement, or combination, to deprive Hershner of his rights. All Hershner alleges are various statements and activities made by a private person and public officials. He does not allege facts connecting any of those statements or activities together. But "'[m]ere conclusory allegations are insufficient' to state a claim under § 1985 and . . . plaintiffs 'must plead the operative facts upon which their claim is based.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 389–90 (5th Cir. 2017) (quoting *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987)); see also *Riley*, 900 S.W.2d at 720 ("One cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." (internal quotation marks omitted)). We agree with the district court that Hershner's complaint fails to "connect the dots" to establish the agreement required for a conspiracy claim.[4]

**3.** Hershner alleges several constitutional claims against a private person, Swanson. Without a conspiracy between Swanson and any

---

[4] Hershner cites "§ 1985(3)." Presumably Hershner is referencing 42 U.S.C. § 1985 – Conspiracy to interfere with civil rights. Citing Section 1985 does not eliminate the need for an agreement and therefore does not fix the defects of Hershner's conspiracy claim.

government actor, all Hershner's constitutional claims involving Swanson fail. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 931 (1982) (noting a "private party's joint participation with a state official in a conspiracy" supports a Section 1983 claim). Without the inclusion of a state official, there is no basis to lodge a claim of deprivation of rights secured by the Constitution. *See* 42 U.S.C. § 1983 (available only for actions made "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . .").

**4.** Hershner also fails to plead facts showing that similarly situated businesses were treated differently than Marty's Live in violation of the Fourteenth Amendment's Equal Protection Clause. "Because 'equality' is a rhetorically ambiguous concept, it's easy to 'invoke any existing descriptive inequality as a basis for asserting what is essentially a prescriptive grievance.'" *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) (quoting Peter Westen, *Speaking of Equality: An Analysis of the Rhetorical Force of "Equality" in Moral and Legal Discourse* 279 (1990)). Hence the Fourteenth Amendment proscribes unequal treatment only among persons similarly situated "in all relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Yet Hershner's complaint lacks any factual allegation of a similarly situated business being treated differently by the City of Dallas, the Dallas Police Department, or the Dallas Department of Code Compliance. He alleges only instances of interactions with public officials at Marty's Live and conversations that suggest the City of Dallas officials will inspect other bars. Without any allegation of any similarly situated business being treated differently than Marty's Live, the equal protection claim fails. *See Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 978–79 (5th Cir. 2022).

Even if Hershner alleges that Marty's Live was treated differently from similarly situated businesses, he fails to allege facts suggesting the

government defendants lacked a conceivable rational basis for engaging in the complained-of behavior. The City of Dallas need not "articulate . . . the purpose or rationale supporting its classification[,] as long as there is a reasonably conceivable state of facts that could provide a rational basis for the classification." *Gibson v. Tex. Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (internal quotation marks omitted). Here, Hershner has not sufficiently refuted that controlling traffic and investigating city code and liquor law violations are typical exercises of the police power and are not inherently irrational reasons for city officials to be present at or near Marty's Live.[5]

**5.** Hershner fails to show that the government violated his "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The complaint alleges no facts that raise a reasonable inference that the Dallas Police presence around Marty's Live—allegedly at the request of Dallas's City Council who received traffic complaints from nearby residences, and for periodic code inspections—infringed on Hershner's right to engage in First Amendment activity. Furthermore, Hershner's argument that a denial of his dance hall license application violates his First Amendment rights fails because there is no First Amendment right to a dance hall license. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("We think

---

[5] Hershner argues that he should not have to plead disparate treatment in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). But *Bruen* only concerns the Second Amendment. This Court has not changed its requirement to prove both disparate treatment compared to those similarly situated and a lack of a rational basis for the government to engage in that disparate treatment. *Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 977–80 (5th Cir. 2022).

the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment.").

**6.** Hershner posits that on November 20, 2021, the Dallas Police presence at Marty's Live was an unreasonable search under the Fourth Amendment because the officers did not obtain a warrant to enter and search the bar. That claim fails because the Fourth Amendment's general rule against warrantless administrative searches is "particularly attenuated in commercial property employed in 'closely regulated' industries." *New York v. Burger*, 482 U.S. 691, 700 (1987). And "[t]he liquor industry has been a closely regulated industry." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 197 (5th Cir. 2009) (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 77 (1970)). "The owner of a liquor establishment's attenuated Fourth Amendment interests 'may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.'" *Id.* (quoting *Donovan v. Dewey*, 452 U.S. 594, 599 (1981)). Such a circumstance exists in Texas, where Marty's Live operates. *See* Tex. Alco. Bev. Code § 101.04(a) ("By accepting a license or permit, the holder consents to . . . a peace officer entering the licensed premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this code."). There was no Fourth Amendment violation when peace officers[6] searched Marty's Live "in front of and behind the bar of the venue with flashlights." Whether this tactic is effective, it is no violation of the Fourth Amendment for government officials to ensure compliance with establishments' liquor license requirements which contain quality and purity standards. *See* Tex. Alco. Bev. Code § 5.38. Nor does the number of officers conducting the search change the inquiry. Hershner asserts no

---

[6] Which includes sheriffs and police officers, among other law enforcement officers. *See* Tex. Code of Crim. Pro. Art. 2A.001.

jurisprudential authority for the proposition that a search may become invalid if it involves too many police officers. Nor are we aware of such authority.[7]

**7.** Hershner alleges a Fifth Amendment takings claim, but he fails to allege a property interest under Texas law or a longstanding interest in the license. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 322 (5th Cir. 2022) ("The Takings Clause protects property interests but does not create them."). Marty's Live once had a dance hall license, but it expired. So the business applied for a new license. The City of Dallas denied it because of the bar's failure to comply with the application's requirement of obtaining a separate SUP. The property interest Hershner alleges is a right to be approved for a dance hall license. There is no expectation that Hershner's renewal application would be approved. *See* Dallas City Code. Dallas, Tex., Code § 14-9; *see also Hignell-Stark*, 46 F.4th at 325 ("The plaintiffs didn't have property interests in the renewal of their licenses."). Furthermore, the City of Dallas may deny a permit for various reasons. *See* Dallas City Code. Dallas, Tex., Code § 14-3. One of those is that "[o]peration of the proposed dance hall would violate the city's zoning ordinances." *Id*. In turn, the City of Dallas's zoning ordinances require a SUP "for any dance hall" in certain zoning districts, or proximity to other zoning districts. *See* Dallas City Code. Dallas, Tex., Code § 51A-4.210(b)(7)(B)(iv). As in *Hignell-Stark*, Hershner does not establish a property interest under state law. 46 F.4th at 325. Nor does he allege sufficient facts demonstrating that his license is "so rooted in custom and practice that [it] amount[s] to property." *Id*.

---

[7] As much as Hershner argues that the Code itself was unconstitutional, he was required to provide notice to the Texas Attorney General, which he did not. *See* Fed. R. Civ. P. 5.1(a)(2).

No. 23-11214

## Conclusion

We AFFIRM the district court's judgment granting both Swanson's and the City of Dallas's motions to dismiss for failure to state a claim.