# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60537

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2017

Lyle W. Cayce
Clerk

KERMIT O. ROGERS,

> Plaintiff - Appellant

v.

LEE COUNTY, MISSISSIPPI; CITY OF TUPELO, MISSISSIPPI; JIM H. JOHNSON, In his Official Capacity as Sheriff of Lee County, Mississippi; SAMUEL T. WARREN, In his Individual capacity as a Lee County Sheriff's Department Law Enforcement Officer; PAUL HOWELL, In his individual capacity as a Lieutenant with the city of Tupelo Police Department/North Mississippi Narcotics Unit,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:13-CV-243

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Plaintiff-Appellant Kermit O. Rogers appeals the district court's final judgment dismissing all of his claims against Defendants-Appellees Sam Warren and Paul Howell in their individual capacities; the sheriff of Lee

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60537

County in his individual capacity; the City of Tupelo, Mississippi; Lee County, Mississippi; and the North Mississippi Narcotics Unit. For the reasons set out below, we REVERSE the dismissal of his claims against Warren and Howell relating to the warrantless search but otherwise AFFIRM.

## I.    Background[1]

In 2009, Plaintiff-Appellant Kermit O. Rogers was the subject of a valid search warrant allowing the search of the following property: "320 CR 401, Shannon, Lee County, Mississippi, together with all approaches and appurtenances thereto. Also, all vehicles and out buildings on the property." The officers found 5.89 grams of crack cocaine in the house located on 320 CR 401, as well as 189.73 grams of crack cocaine in a red truck parked near a building some distance away and visibly identified as 320A CR 401.

The State of Mississippi only charged Rogers with three sales of crack cocaine, not for the crack cocaine found during the execution of the search warrant. He received a thirty-year sentence on each sale, with twenty years of each suspended and the remaining ten years on each to be served concurrently. He was later released by the State on probation prior to serving time on his federal charge, which is the subject of this suit.

The United States charged Rogers with possession with intent to distribute in excess of fifty grams of a substance containing cocaine base in violation of 21 U.S.C. § 841(a), (b)(1)(a), which necessarily included the drugs found in the red truck parked outside the 320A building. Rogers filed a motion to suppress the evidence of the drugs found in the truck, arguing that the truck

---

[1] Unless otherwise noted, the facts in this section come from *United States v. Rogers*, 481 F. App'x 157, 158 (5th Cir. 2012) and the undisputed facts set out in the parties' briefs in this appeal.

was not parked on the 320 property covered by the warrant, but instead was parked on completely different property, the 320A property, and was therefore beyond the scope of the warrant. Rogers entered a conditional plea of guilty, reserving his right to appeal any determination on his motion to suppress. The district court denied the motion without holding a hearing and accepted his conditional guilty plea, and Rogers appealed.

The Fifth Circuit panel vacated the district court's denial of Rogers's motion to suppress and remanded to the district court for a hearing on the motion. The panel noted that the parties disputed whether the truck was parked on the 320 property or a separate property, and whether the officers made a reasonable effort to ascertain and identify whether the truck was on the property identified in the warrant. In particular, the panel found that the court's findings were based on the government's "unsupported statements in its pleadings, [which] were insufficient to determine that the officers made a reasonable effort to identify whether the truck was on the property listed in the warrant."[2] Thus, the panel remanded for an evidentiary hearing.

On remand, the district court held the hearing and granted Rogers's motion to suppress and excluded the evidence of the drugs found in the truck under the "fruit of the poisonous tree" doctrine.[3] It noted that it had denied Rogers's earlier motion to suppress without a hearing because "the Government represented to the court: (1) that 'the officers found a larger amount of crack cocaine inside a red truck *parked outside the residence* [at 320 CR 401],' and (2) that '[t]he red truck belonging to the defendant was

---

[2] 481 F. App'x at 160.

[3] *United States v. Rogers*, No. 1:09CR139-M-S, 2013 WL 435946, at *4 (N.D. Miss. Feb. 4, 2013).

found *parked in the back of the residence located at 320 CR 401.*"[4] The court concluded that both representations were false.

The court noted that the warrant described the place to be searched as "320 CR 401, Shannon, Lee County, Mississippi, together with all approaches and appurtenances thereto. Also, all vehicles and out buildings on the property."[5] The court continued:

> The property where the red truck was located—320A CR 401—is in no way part of that description. It has a different address. It is owned by someone other than the defendant. It is at least 200 yards away from the property at 320. It has its own driveway leading to the main road. It has its own metered connection to the power company—in someone else's name. It has a separate E911 address—registered to someone other than the defendant. It is barely visible from the property covered under the warrant. Though a small dirt track leads from the back of the property at 320 to the property at 320A, one must wind around a turn and travel past various structures and fenced pastures to reach it.

> The investigating officers [including Warren and Howell] knew that the situation was problematic enough that they now—for the first time ever—claim they called the judge issuing the warrant in an effort to shore it up. They made no effort whatsoever to document the alleged telephone call, and the issuing judge, according to the officers and representations by the Assistant United States Attorney, had absolutely no recollection of having received such a call. Indeed, the government did not even call him as a witness. The court gives the alleged call no weight at all.

> Though Fourth Amendment issues can sometimes be thorny, there is nothing difficult about the decision in this case because, by any rational measure, the law enforcement officers' search of Rogers' truck was unreasonable. Neither the truck nor the building by which it was parked were within the scope of the search warrant,

---

[4] *Id*. at *1 (alterations and emphasis in district court opinion).
[5] *Id*. at *3.

and the officers' purported telephone call neither expanded the scope of the warrant, nor constituted a new warrant.[6]

As the court further explained, the telephone call would have been insufficient to satisfy the warrant requirement under federal law (e.g., it was not given "under oath or affirmation" or memorialized in writing after the fact under Fed. R. Crim. P. 4.1),[7] and at any rate Mississippi law does not allow officers to obtain or extend a warrant by telephone.[8]

The court also concluded that the search was not protected by the good faith exception to the warrant requirement (also relevant to this appeal), which the court accurately summarized as follows:

> The standard for the good-faith exception is that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the [prosecution's] case-in-chief even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Pena–Rodriguez,* 110 F.3d 1120, 1130 (5th Cir. 1997). "Issuance of a warrant normally suffices to establish good faith on the part of law enforcement who conduct a search pursuant to the warrant." *Id.* Law enforcement officials cannot establish objective good faith, however, when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render the official's belief in its existence entirely unreasonable.'" *Id.* quoting [*United States v. Leon*, 468 U.S. 897, 923 (1984)]. The good-faith exception to the exclusionary rule permits officers to rely upon a warrant supported by an affidavit alleging more than wholly conclusory statements even if the affidavit is ultimately found not to establish probable cause. Consequently, a skeletal affidavit does not justify good-faith reliance on a warrant.[9]

---

[6] *Id.* at *3-4.

[7] *Id.* at *4.

[8] *White v. State*, 842 So. 2d 565 (Miss. 2003).

[9] 2013 WL 435946, at *5.

The court concluded that the good faith exception did not apply to show that the officers were objectively reasonable in relying "upon the only warrant issued (for 320 CR 401) as a basis to search 320A" because "[t]he evidence presented strongly supports Rogers' view of events, and cross-examination of the witnesses [including Warren and Howell] left them without credibility."[10] The court noted a number of "troubling aspects of the case" and concluded: "There is a palpable difference between doing the best one can in interpreting and executing a search warrant that is, ultimately, found wanting—and knowingly cutting corners while executing the warrant, then relying upon the good-faith exception to the exclusionary rule to rescue the unlawful search. The officers in the present case chose the latter."[11]

The district court therefore excluded the evidence, which resulted in the government dismissing the case. Rogers spent a total of approximately 452 days in federal incarceration before his conviction was overturned. Rogers then filed this action alleging multiple violations of his civil rights under 42 U.S.C. § 1983, against Warren and Howell and against the municipal defendants. He asserted claims of (1) unlawful seizure, unlawful search, and false imprisonment under the Fourth and Fourteenth Amendments, as well as conspiracy to do the same, in that the defendants allegedly instituted the proceedings, prosecuted, convicted, and confined Rogers "with knowledge that the evidence procured against [Rogers] was unlawful and inadmissible"; (2) violations of procedural and substantive due process under the Fourteenth Amendment, in that the defendants' actions allegedly "deprived [Rogers] of his right to fundamental fairness in a criminal proceeding"; (3) failure to train

---

[10] *Id*.

[11] *Id*. at *7.

6

and/or supervise by the municipal defendants; and (4) supplemental state law claims, including malicious prosecution.

Eventually, the district court granted the defendants' motions for summary judgment through two orders, dismissing Rogers's claims against all defendants.[12] On appeal, Rogers does not challenge any of the district court's findings as to the municipal defendants, and he expressly concedes his appeal with respect to the sheriff, leaving only his claims against Warren and Howell. With respect to the officers, the district court determined: (a) that Warren and Howell are entitled to qualified immunity on the unlawful search because they acted objectively reasonably; (b) that Rogers failed to make out a substantive due process claim under the Fourteenth Amendment; and (c) that he failed to make out a viable claim under state law. Rogers timely appealed.

## II.   Jurisdiction and Standard of Review

The district court had federal question jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment under Fed. R. Civ. P. 56 de novo, i.e., the usual Rule 56 standards.[13] Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]

---

[12] The district court initially entered an order and memorandum opinion granting the defendants' motions for summary judgment, *see Rogers v. City of Tupelo, Miss.*, No. 1:13CV243-SA-DAS, 2015 WL 3450266 (N.D. Miss. May 29, 2015) (hereinafter "First MSJ Opinion"). Rogers filed a motion for reconsideration, which the district court granted in part in a brief order, *see Rogers v. City of Tupelo, Miss.*, No. 1:13CV243-SA-DAS, 2016 WL 1249156 (N.D. Miss. Mar. 28, 2016). On reconsideration, the district court again granted the defendants' motions for summary judgment in full, *see Rogers v. City of Tupelo*, No. 1:13CV243-SA-DAS, 2016 WL 3849563 (N.D. Miss. July 13, 2016) (hereinafter "Second MSJ Opinion").

[13] *James v. Gonzalez*, 348 F. App'x 957, 959 (5th Cir. 2009).

[14] Fed. R. Civ. P. 56.

No. 16-60537

## III.    Analysis

### A.    The District Court Erred By Granting Qualified Immunity To Warren And Howell On The Ground That They Acted Objectively Reasonably.

Even though the district court correctly concluded that the search of the truck on the 320A property took place without a warrant and was not saved by the automobile exception, it found that both Warren and Howell are entitled to qualified immunity because they acted "objectively reasonably."[15] The district court reversibly erred under the summary judgment standard.

Resolving the qualified immunity question at summary judgment involves a two-pronged inquiry. The first prong is "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'"[16] The second prong is "whether the right in question was "clearly established" at the time of the violation."[17] "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'"[18]

> Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any

---

[15] First MSJ Opinion, 2015 WL 3450266, at *3.

[16] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865, 188 L. Ed. 2d 895 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[17] *Id.* at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

[18] *Id.* (quoting *Hope*, 536 U.S. at 741).

8

material fact and the movant is entitled to judgment as a matter of law." In making that determination, a court must view the evidence "in the light most favorable to the opposing party."[19]

The district court addressed both prongs. First, it correctly concluded that the search of the red truck on the 320A property was conducted without a warrant, and it also correctly noted that "[a] warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement.[20] The court explained, again correctly, that the search of the truck did not fall under the Fourth Amendment's automobile exception because "Rogers was either several miles down the road at his mother's house or being held in the residence by other officers at 320 CR 401," so "there was no exigent circumstance regarding the vehicle's mobility which would excuse a warrantless search of the automobile."[21]

Second, the district court concluded that this warrantless search violated a clearly established constitutional right, specifically the Fourth Amendment's "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[22] Moreover, the district court agreed with the criminal court in the previous case that it was impossible for the officers to rely on the telephone extension of the warrant because "Mississippi does not recognize warrants procured telephonically" under *White*, which was decided approximately six years before this search.[23]

Despite all of those correct findings, the district court nevertheless concluded that Warren and Howell "were objectively reasonable in assuming

---

[19] *Id.* (citations omitted).

[20] First MSJ Opinion, 2015 WL 3450266, at \*4 (citing *United States v. Guzman*, 739 F.3d 241, 245 (5th Cir.2014) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984))).

[21] *Id.*

[22] *Id.* at \*5 (citing cases).

[23] *Id.*

the 320A building and surrounding areas were part of the same parcel as 320

CR 401."[24] It based this finding on the officers' own accounts:

> Both officers testified that they believed the 320A CR 401 property to be part of the same property as 320 CR 401 and thus covered by the warrant. Warren testified that to reach the 320A building, he had to walk down a dirt path about two hundred yards. He indicated that he saw the designation that the building was located at 320A, but thought it was for electric meter purposes only. The officers continually referred to the 320A building as an "outbuilding" or "shop building." Moreover, at least one vehicle surrounding that building was registered in Kermit Rogers' name and at the address listed in the search warrant. Therefore, they assert their actions were objectively reasonable in light of the clearly established law. . . .

> The Court finds that the officers were objectively reasonable in authorizing the search of the red truck parked outside the 320A building. The search warrant indicated the areas to be searched to include all appurtenances, outbuildings and vehicles surrounding 320 CR 401. Once officers ran the tag on the red truck, which came back that it was registered to the Plaintiff at the 320 CR 401 address, it would not be unreasonable for them to assume the "outbuilding" metered as 320A CR 401 was covered under the warrant. Also, Warren's authorization of the search of the red truck parked outside 320A CR 401 was not unreasonable in light of the assurances given by the Justice Court Judge Pat Carr that searching that property was "fine." The Court cannot find that the officers were plainly incompetent or knowingly violated the law on the basis of the record. Therefore, even though the 320A building was over two hundred yards away, not visible from the residence explicitly covered by the search warrant, and equipped with a separate meter, the Court finds that the officers acted in an objectively reasonable manner in authorizing the search of the red truck.[25]

---

[24] *Id.*

[25] 2015 WL 3450266, at *5-6 (citation omitted).

We conclude the district court did not properly apply the summary judgment standard. First, the district court stated without qualification that "[w]hether the official acted with objective reasonableness is an issue of law reserved for the court."[26] That question is only an issue of law if the facts are undisputed. The case the district court cited for that proposition took the plaintiff's alleged facts as true, then determined whether those facts, as a matter of law, violated his constitutional rights.[27] A finding of objective reasonableness is not appropriate, however, if the material facts are in dispute,[28] as they are in this case.

The district court based its finding that Warren and Howell acted with objective reasonableness on their accounts of how they subjectively viewed the relationship between the 320 and 320A properties. As illustrated by the district court's description of the properties in the previous criminal case, *supra*, there is a great deal of evidence that severely undermines the officers' accounts. Moreover, there is a wealth of other summary judgment evidence contradicting the officers' subjective testimony that they acted reasonably.

Most notably, the officers claim their telephone call to the judge showed that they acted objectively reasonably, essentially by relying on the judge's opinion that the search of the truck was acceptable under the circumstances. There are several major disputes precluding summary judgment on this point.

---

[26] *Id.* at *5 (citing *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999)).

[27] *See Williams*, 180 F.3d at 701.

[28] *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) ("Rule 56 still has vitality in qualified immunity cases if the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them."); *see also Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (noting that in *Lampkin*, "We concluded that this court would be unable to make the determination of the objective reasonableness of the officer's activities 'without settling on a coherent view of what happened in the first place.'").

First, Mississippi law does not allow for telephone warrants or extensions under *White*, but *White* went further than that: it set out circumstances that might show an officer still acted objectively reasonably under *Leon*, *supra*:

> Today, we adopt the *Leon* good faith exception to warrantless searches and further find that it applies to the case at bar. The officer stated that a district attorney had informed them in police procedures training that such warrants were permissible under appropriate circumstances. Further, the officer stated that he had obtained such a warrant on one or two prior occasions. Beyond that, the oral statement was given under oath to a neutral magistrate. More importantly, the following morning, the officer filled out a written warrant and record of the telephone conversation and presented it to the authorizing judge. Thus, a follow up procedure utilizing some, though admittedly not all, of the generally recognized safeguards was used here. Instead of immediately entering the apartment and conducting a warrantless search, these officers "did their duty" by pursuing a more careful, prudent course. Thus, the officers had a reasonable good faith belief that they were executing a valid warrant, and the exclusionary rule should not operate in this case.[29]

The 2009 search of Rogers's property took place well after *White*, and virtually none of the factors identified by the *White* court as indicating objective reasonableness were present here. There were no contemporaneous written records as to what Warren told the judge over the phone, no undisputed evidence that it was even given under oath, and no follow-up procedure whatsoever to document the call.

The failure to document the call in itself might be fatal to Warren and Howell's claim of objective reasonableness relating to the call under Mississippi law, but even if we examine the later testimony relating to the call, the officers still are not entitled to summary judgment.

---

[29] *White*, 842 So. 2d at 571-72 (citation omitted).

The call is only helpful to the defendants if it helps to show objective reasonableness. Because Mississippi law precludes extensions of warrants by telephone, the call cannot help them if Warren intended it to extend the scope of the warrant. If Warren made the call merely to confirm whether the truck was covered by the existing 320 property warrant, he could only rely on the judge's permission if he accurately told the judge the relevant facts (e.g., the distance between the 320 and 320A properties and the fact that the red truck was parked outside the 320A property).

Judge Carr's testimony years later raises factual disputes as to those points, however. Judge Carr did not object when Howell's attorney characterized Warren's call as seeking an extension of the warrant. When Rogers's attorney asked if Warren told him "why he thought the property was suspicious" Judge Carr replied, "I don't know the particulars. Just said it was adjoining property close at hand and he would like to check it." Judge Carr also said Warren did not tell him whether or not any narcotics had been found at the property covered by the warrant. Thus, Judge Carr's testimony does not demonstrate that Warren told him all of the relevant facts; indeed, it suggests the opposite ("adjoining property close at hand"). There is, in short, a genuine dispute as to the contents of the call.

There is also a factual dispute as to when the officers knew the red truck parked outside the 320A property was registered to Rogers at the 320 property. Deposition testimony established that the phone call in question took place on Judge Carr's lunch break, which began at approximately 11:30 a.m. Rogers was Mirandized at 1:08 p.m. on the 320 property, and a printout of search results suggests that the officers did not request the truck registration until 1:29 p.m. It is not clear when the search of the red truck actually took place. Although the officers claim they asked Rogers if the truck was his before they

searched it, he disputes that. Thus, there is a genuine dispute as to what the officers knew when they called the judge, and what they knew when they searched the red truck.

Finally, the district court's own conclusion to its analysis suggests it was making a judgment call as to the evidence: "Therefore, even though the 320A building was over two hundred yards away, not visible from the residence explicitly covered by the search warrant, and equipped with a separate meter, the Court finds that the officers acted in an objectively reasonable manner in authorizing the search of the red truck."[30] All of those factors suggest the 320A property was truly separate property from the 320 property, and the only reasons the district court gave for ruling in favor of the defendants is their own testimony on issues that are genuinely disputed.

In short, we conclude the district court failed to properly apply the summary judgment standard. The record evidence shows a number of genuine disputes as to material facts concerning the relationship between the 320 and 320A properties, as well as the officers' knowledge and conduct on the day of the search. It is impossible to find for the officers without making a credibility call in their favor. On summary judgment, however, we are bound to draw all inferences in favor of the nonmovant, Rogers.

Because we cannot find, on summary judgment, that the officers acted objectively reasonably in conducting the warrantless search of the red truck, we reverse the district court's grant of qualified immunity in favor of Warren and Howell relating to the warrantless search of the 320A property, including the red truck.[31]

---

[30] First MSJ Opinion, 2015 WL 3450266, at *6.
[31] The district court found that Howell was even more strongly entitled to summary judgment than Warren because Howell did not participate in the call to the judge. *Id*. We

## B.    The District Court Did Not Err By Dismissing Rogers's Substantive Due Process Claims.

In addition to the more typical Fourth Amendment claims discussed above, Rogers also asserted a substantive due process claim under the Fourth and Fourteenth Amendments, relying on *Albright v. Oliver*, 510 U.S. 266 (1994), and *Napue v. Illinois*, 360 U.S. 264 (1959). In short, this claim is based on his allegations that the officers used "deceptive and reckless misrepresentations" (and, in his view, fabricated or hid evidence) to obtain a wrongful conviction. The district court initially held that Rogers could not pursue it because he had never been convicted,[32] but on reconsideration the court rejected the claim on the merits.[33]

Thus, although Rogers argues the district court erred by refusing to address the merits of his substantive due process claim due to its erroneous belief that he had not been convicted, that argument is moot because the district court did address the merits in its second opinion.[34]

We cannot say the district court erred by dismissing this claim on the merits. "The Fourteenth Amendment guarantees '[s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"[35]

---

reject that reasoning. Although Howell did not participate in the call itself, Warren testified in his deposition that both he and Howell made the decision to search the 320A property following Warren's telephone call with the judge. Thus, although Howell is arguably less culpable than Warren, he cannot be dismissed as a matter of law.

[32] First MSJ Opinion, 2015 WL 3450266, at *8.

[33] Second MSJ Opinion, 2016 WL 3849563.

[34] Although the argument is moot, we do note that the Fifth Circuit in the criminal proceeding described the matter as "a direct appeal from a felony conviction." 481 F. App'x at 157.

[35] *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (en banc) (quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)).

Rogers may prevail on his due process claim only if he is able to show that the defendants intentionally or knowingly presented false evidence or fabricated evidence,[36] and that their actions shock the conscience. A mistake is not enough to support a substantive due process claim.

We conclude that the summary judgment evidence, taken in the light most favorable to Rogers, does not support his claim. The evidence is sufficient to show that Warren and Howell acted objectively unreasonably in conducting the warrantless search of the red truck, but it demonstrates at most negligence or incompetence rather than a conscience-shocking intent to lie about, misrepresent, or fabricate evidence. Thus, we affirm the district court's dismissal of Rogers's substantive due process claim.

### C.     The District Court Did Not Err By Dismissing Rogers's Malicious Prosecution Claim Under Mississippi Law.

Finally, Rogers argues the district court erred by dismissing his state law malicious prosecution claim pursuant to the police function exemption of the Mississippi Tort Claims Act ("MTCA").[37] In brief, as the district court explained, under the MTCA, Miss. Code Ann. § 11—46—7(1), Warren and Howell cannot be held liable for the actions they committed within the course and scope of their employment as police officers.[38] The MTCA contains an exception to this immunity if an officer's conduct "constituted fraud, malice,

---

[36] *See*, *e.g.*, *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014) ("The Supreme Court has repeatedly held that 'a conviction obtained through false evidence, known to be such by representatives of the State' violates a defendant's constitutional rights. (quoting *Miller v. Pate*, 386 U.S. 1, 7 (1967)); *Napue*, 360 U.S. at 269 ("The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.").

[37] Rogers asserted other state law claims, *see* First MSJ Opinion, 2015 WL 3450266, at *11, but he has waived those claims for failing to argue them on appeal.

[38] First MSJ Opinion, 2015 WL 3450266, at *11-12.

libel, slander, defamation or any criminal offense other than traffic violations,"[39] which would include malicious prosecution.[40]

The district court concluded that Rogers failed to show any genuine issue of material fact as to malicious prosecution because he failed to show "that Warren had any malice in making that report. No reason for such a statement has been extended by the Plaintiff to indicate Warren's malicious intent. Accordingly, that state law claim fails."[41] Similarly, the court found no evidence that Howell acted maliciously, especially given that he did not write the report that ultimately became the basis of Rogers's federal conviction. On these facts, we cannot say the district court erred. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants on Rogers's state law claims.

## IV.   Conclusion

For the reasons set out above, we REVERSE the grant of summary judgment in favor of Defendants-Appellees Warren and Howell on Rogers's claims relating to the warrantless search of the red truck on the 320A property. Otherwise, we AFFIRM the district court's grant of summary judgment on the other claims against Warren and Howell (including Rogers's substantive due process and state law claims) and all claims against all other defendants.

---

[39] Miss. Code Ann. § 11–46–5(2).

[40] First MSJ Opinion, 2015 WL 3450266, at *12 (footnote omitted).

[41] *Id. See Benjamin v. Hooper Elec. Supply Co., Inc.*, 568 So. 2d 1182, 1191 (Miss. 1990) ("'Malice' in the law of malicious prosecution is used in an artificial and legal sense and applied to a prosecution instituted primarily for a purpose other than that of bringing an offender to justice.").