# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2020

Lyle W. Cayce
Clerk

No. 20-20058

Jasma McCullough,

*Plaintiff—Appellant*,

*versus*

Shaylonda Herron; Sonya White; Fredrick Jones,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-83

Before Owen, *Chief Judge*, and King and Engelhardt, *Circuit Judges*.
Per Curiam:*

A mother brought suit under 42 U.S.C. § 1983 against three employees from the Texas Child Protective Services, alleging constitutional violations in connection with the removal of her children in 2015. We affirm the district court dismissal of all Defendants.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20058

I.

In November 2014, the Texas Department of Family and Protective Services ("TDFPS") received reports from the paternal grandmother of Plaintiff Jasma McCullough's (hereafter referred to individually as "McCullough") children alleging medical neglect and neglectful supervision. According to the grandmother, McCullough had three children: a two-year-old with a "seizure disorder" and a four-year-old who lived with the grandmother, and a nine-month-old baby who lived with McCullough in her car. The report was referred to Child Protective Services ("CPS") Investigator Shayolonda Herron ("Herron").

Five days after the first report about McCullough's medical neglect of her two older children, and before investigator Herron had contacted McCullough, CPS received another report, this time from law enforcement. The investigation report submitted by the Houston Police Department expressed concern about McCullough's children, and in particular, her youngest child, after a verbal altercation between McCullough and the father of the child. It was reported that McCullough drove off with the father's vehicle while holding her child on her lap. According to the intake report, McCullough stated she "does not have a stable place to live," and will have to leave her sister's home in a few days with "nowhere else to take the children."

In less than one week, CPS had received two reports – from two separate sources – that all three of McCullough's children were endangered or put at increased risk of harm due to the conduct of their mother. Herron informed her supervisor, Sondra White ("White"), about the second report, and was instructed to "immediately go out on the case and try to make contact with the family, and staff the case from the field."

2

No. 20-20058

Herron interviewed McCullough about the allegations in both reports on December 9, 2014. According to Herron's investigative notes, McCullough did not believe there was anything wrong with holding the child in her lap while driving; when the children got sick, she took them to the emergency room; the two-year old had a seizure two weeks earlier as a result of a fever; she admitted that the child's seizures were happening more frequently, but only occurred when he has a fever; and she confirmed that the children did not have a primary care physician because she had missed too many appointments.

Herron asked McCullough to sign a safety plan agreeing to take all the children to a doctor and to take a drug test. McCullough attempted and failed several times to take the children to see a pediatrician due to insurance coverage issues. Herron threatened to pursue legal actions if McCullough did not take the drug test and take her children to the doctor. After not showing for her first scheduled drug test and reportedly arriving after close of business for her second, McCullough submitted to a drug test. McCullough's hair follicle test was positive for cocaine, but the urinalysis test was negative.

After seeing McCullough's drug test results, on January 5, 2015, Herron appeared before a state court and swore to the contents of two affidavits supporting TDFPS's request for an emergency removal of McCullough's three children from her custody. The affidavits based the need for removal on medical neglect and neglectful supervision of McCullough's children, and omitted reference to the negative urinalysis. Herron testified that one child had a history of seizures, McCullough had failed to take the child to the doctor, and McCullough had tested positive for cocaine. Herron did not, at that time, testify about the negative test result. Herron recommended removal due to medical neglect because all three children were behind on routine medical and dental appointments, and the middle

No. 20-20058

child's seizure condition continued to be unaddressed. The court granted an emergency order of removal.

On January 14, 2015, a hearing was held on the emergency removal of the children. Herron stated that her current concerns for the children were McCullough's positive hair follicle drug test, lack of residence, and the ongoing conflict with the father of two of her children. At this hearing, Herron also referenced the negative urinalysis while under oath. At the hearing, McCullough denied taking illegal drugs and denied her middle child had a seizure disorder. At the conclusion of the hearing, the court appointed the TDFPS as the temporary managing conservator and approved the placement of the children with a family member and supervised visits for McCullough. Her children were returned to her 14 months later.

McCullough filed suit on January 6, 2017 against "all who were directly involved and participated in the wrongful removal and retention" of her children. After filing a series of eight amended complaints, and adding and removing entities and individuals as defendants, McCullough complained that four TDFPS employees and Harris County violated her constitutional rights when they obtained an emergency removal order based on false information. Specifically, she alleged four causes of action: (1) violation of substantive due process rights to familial association and integrity; (2) violation of procedural due process rights to familial associational rights; (3) violation of Fourteenth Amendment rights; and (4) violation of the Fourth and Fourteenth Amendment rights.

On June 7, 2018, the district court adopted a magistrate judge's recommendation to dismiss Harris County and the individual defendants for violations of McCullough's procedural due process rights and found that McCullough failed to state any violation of substantive due process against Defendants White or Jones. The court also partially denied Herron's motion

to dismiss, finding that Herron was not entitled to qualified immunity based on McCullough's allegation that Herron lied in her affidavit to obtain the court order for removal of the children, allowing only McCullough's due process claim against Herron to proceed. On September 3, 2019, the district court granted Herron's motion for summary judgment, after finding that Herron was entitled to qualified immunity. McCullough appeals the dismissal of claims against Defendants Herron, White, and Frederick Jones ("Jones")

## II.

In her motion for summary judgment, Herron asserts that she is entitled to qualified immunity because she did not violate McCullough's constitutional right to family integrity for two main reasons: First, that Herron is entitled to absolute immunity for her state court testimony. And second, that McCullough cannot show objectively unreasonable violations of clearly establish federal constitutional law. The district court granted summary judgment after finding McCullough failed to raise a fact issue that Herron knowingly made false statements in her affidavit.

On appeal, McCullough raises eight points of error, the central issue of which is whether the district court correctly held that the Defendants were entitled to qualified immunity from McCullough's claims under the Fourteenth Amendment, which prohibits state actors from depriving individuals of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV; *see Morris v. Dearborne*, 181 F.3d 657, 666-67 (5th Cir. 1999) (citing *Stanley v. Illinois*, 405 U.S. 645 (1972), and explaining that the right to family integrity is a form of liberty protected by the Fourteenth Amendment's Due Process Clause). In response, Defendants argue the district court correctly concluded they were entitled to qualified immunity from McCullough's Fourteenth Amendment claims.

No. 20-20058

We review the motion for summary judgment de novo, and we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

McCullough also appeals the dismissal of supervisors White and Jones. The district court adopted the report and recommendation of the magistrate judge to dismiss all claims against Defendants, except the substantive due process claim against Herron, on July 11, 2018. The court denied McCullough's motion for reconsideration and motion to correct errors, and dismissed White and Jones. We review the district court's grant of the supervisor's motion to dismiss de novo. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010).

*Qualified Immunity*

"Summary judgment is required if the movant establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing FED. R. CIV. P. 56(c)). In order to prevail on a claim under Section 1983, a plaintiff must establish that the defendant deprived the plaintiff of their constitutional rights while acting under the color of state law. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). When a public official invokes a qualified immunity defense, however, the burden shifts to the plaintiff to

6

rebut the defendant's assertion. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc); *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact). Child protective service workers are entitled to qualified immunity to ensure that an effective child-abuse investigation system exists. *Stem v. Ahearn*, 908 F.2d 1, 5 (5th Cir. 1990). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," and applies "unless existing precedent…placed the statutory or constitutional question beyond debate." *Id*. at 371. Government officials are entitled to qualified immunity from liability for civil damages unless (1) the official violated a statutory or constitutional right (2) that was clearly established at the time of the challenged conduct. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

A right is deemed to be clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violated that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009). "That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To establish qualified immunity as a defense, a defendant must demonstrate

No. 20-20058

that the alleged conduct occurred while they were acting in their official capacity. *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).

*Substantive Due Process*

The constitutional guarantee of substantive due process prohibits arbitrary or conscience-shocking action by state actors. *See Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012). Among other protections, the federal constitution protects the right to "family integrity," which is characterized as a "form of liberty guaranteed by the due process clause of the Fourteenth Amendment," including the "rights to conceive and to raise one's children" and to maintain the "integrity of the family unit." *Morris* 181 F.3d at 666-67 (quoting *Stanley* 405 U.S. at 651). This right can also be described as "the right of the family to remain together without the coercive interference of the awesome power of the state." *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988).

The Supreme Court has referred to the "interest of parents in the care, custody, and control of their children" as "perhaps the oldest of the fundamental liberty interests recognized" by the Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The right, however, is not absolute. States have an interest in adopting necessary policies to protect the health, safety, and welfare of children. *Morris*, 181 F.3d at 669; *see also Wooley v. City of Baton Rouge*, 211 F.3d 913, 924 (5th Cir. 2000).

This court has enunciated a test to determine whether the conduct of state actors violated the constitution by analyzing claims of state interference with the right to family integrity "by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *See Morris*, 181 F.3d at 671. The question whether McCullough alleged a violation of the substantive due process right to family integrity can be answered by assessing whether

8

Herron's individual actions were arbitrary or conscience shocking on the continuum between private and state interests. They were not.

The TDFPS received a referral implicating McCullough of medical neglect and neglectful supervision. Herron was assigned to the case and initiated her investigation by interviewing McCullough's children. McCullough initially refused to be interviewed or cooperate with CPS, but eventually agreed after she was threatened with legal action to remove the children. McCullough confirmed to Herron that she was behind on the children's vaccinations, failed to attend several doctor's appointments for her children, and tested positive for cocaine after a hair follicle test.

After the investigation and interviews surrounding the separate referrals to the TDFPS from the children's grandmother and the Houston Police Department, Herron prepared an affidavit to the state court in support of removal. In the affidavit, Herron highlights a previous incident involving CPS from 2012, the positive hair follicle drug test, and medical concerns for the children, but omits reference to the negative urinalysis drug test. The court reviewed the affidavit and signed the emergency order of removal. A follow-up hearing was held shortly after on the emergency removal of the children where Herron testified that her concerns for the children were McCullough's lack of residence, the positive drug test, and ongoing conflict between McCullough and the father of two of her children.

McCullough alleges that Herron knowingly and intentionally included false information in her affidavits and testimony to the court. Specifically, McCullough alleges that Herron failed to properly investigate the allegations of medical neglect, misrepresented the facts in the affidavit that the children were in imminent danger, determined the children were medically neglected without medical records, and that McCullough failed a drug test, engaged in a domestic dispute, and drove with her baby on her lap.

Herron's actions did not violate McCullough's substantive due process rights. Herron was assigned to investigate a report of neglected children, after two independent referrals were received by the TDFPS, and did so. Herron sought voluntary compliance from McCullough, and after frustrated interactions, suspected McCullough of using illegal substances and requested a drug test. McCullough's drug testing was two-fold: her hair follicle test was positive, and her urinalysis test was negative. Herron's affidavit based the need for removal on medical neglect for failure to vaccinate her children or take them to a dentist, and she testified that one child had a history of seizures and was not taken to an appropriate medical appointment and that McCullough tested positive for cocaine.

Herron also recommended removal on the basis of negligent supervision, citing the domestic dispute with the child's father reported by Houston Police, and McCullough's confirmation that the child was unrestrained in the vehicle. All of this information was evidence to Herron that the children were in immediate danger and their continuation in the home would be contrary to their welfare.

Herron presented the information and based her recommendation to the court based on what she was aware of at the time. The record does not support the assertion that Herron intentionally lied, misrepresented, or fabricated evidence to the court. *Cf. Rogers v. Lee Cnty., Miss.*, 684 F. App'x 380, 390 (5th Cir. 2017) (affirming a district court's grant of summary judgment on a substantive due process claim where evidence showed state actors "demonstrate[d] at most negligence or incompetence rather than a conscience-shocking intent to lie about, misrepresent, or fabricate evidence"); *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) ("[W]e conclude that the district court was correct in holding that a teacher's fabrication of sexual abuse against a student's father shocks the contemporary conscience.").

The record does not include any evidence of the predicate conscience-shocking behavior needed to support a substantive due process claim. An inconsistency in an affidavit, along with assertions that Herron should have done more beyond the many visits, phone calls, interviews, and investigations she conducted before reaching her conclusions, do not amount to evidence of "arbitrary or conscience-shocking" conduct. There are no genuine issues of material fact precluding a finding, as a matter of law, that Herron did not violate McCullough's Fourteenth Amendment substantive due process rights.

*Procedural Due Process*

Procedural due process must be provided before parents are deprived of their liberty interest in the custody and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). The procedural protections include, at a minimum, notice and an opportunity to be heard in a meaningful time and manner. *Gibson v. Tex. Dep't. of Ins.– Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). The analysis of a procedural due process claim has two steps: (1) whether a liberty or property interest exists with which the state has interfered; and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)).

This court has established that the Fourth Amendment governs social workers' investigations of allegations of child abuse. *Wernecke v. Garcia*, 591 F.3d 386, 399-400 (5th Cir. 2009). Due Process that satisfies Fourth Amendment standards is adequate to protect parents' Fourteenth Amendment liberty interest in their child's custody. *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). It is also clearly established that a constitutional violation occurs if an official makes a

knowing, intentional, or reckless false statement or omission that causes the issuance of a warrant without probable cause that leads to the removal of a child from its parent's custody. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Once the TDFPS receives a report of abuse or neglect, it must promptly and thoroughly investigate. TEX. FAM. CODE § 261.301(a). If the TDFPS believes that the child's immediate removal is necessary to avoid further abuse or neglect, it must file a petition or take other action under chapter 262 for the child's temporary care and protection. *Id.* § 261.302(d); *see In re E.C.R.*, 402 S.W.3d 239, 246–47 (Tex. 2013). Under Texas Law, a state court may authorize the TDFPS to take possession of a child without prior notice and a hearing if the state court finds among other reasons that "there is an immediate danger to the physical health or safety of the child or the child has been a victim of neglect or sexual abuse and that continuation in the home would be contrary to the child's welfare" or "reasonable efforts consistent with the circumstances and providing for the safety of the child were made to prevent or eliminate the need for removal of the child." *Id.* § 262.102(a). TDFPS' suit for possession without prior notice and a hearing "must be supported by an affidavit sworn to by a person with personal knowledge." TEX. FAM. CODE § 262.101.

In *Marks v. Hudson*, this court considered whether the mother of three minor children could overcome a claim of qualified immunity by social workers based on the mother's allegations that the social workers performed a deficient investigation into allegations of child abuse and made false statements in affidavits to obtain a temporary order of removal of the children from her home. 933 F.3d 481 (5th Cir. 2019). The court concluded that a Fourth Amendment violation exists for a false affidavit submitted to the court for the purpose of obtaining a child seizure order. *Id.* at 486. The court determined that the standard to be employed was probable cause. *Id.* In doing

so, the court confined its review to consider whether, after removing the plausibly claimed fabrications, and inserting all plausibly claimed omitted material, the affidavit would still support the court's finding of probable cause. *Id*. at 487.

The undisputed summary judgment evidence supports Herron's statement that McCullough tested positive for cocaine from a hair follicle test. The fact that the contemporaneous urinalysis sample tested negative does not raise a constitutional claim that Herron lied in her affidavit. The negative urinalysis would only raise an inference that the cocaine usage was not recent. The probable cause determination would remain unchanged with this additional information. Indeed, the court's conclusions at the initial emergency hearing—finding that TDFPS could properly take temporary custody of the children without knowledge of the negative result—were the same as those reached during the subsequent hearing, once testimony about the negative test had been introduced. Hence, the omission of the negative test result from the affidavit did not "lead to the removal of the child from the parent's custody." *Marks*, 933 F.3d at 486. The summary judgment evidence does not support a finding that Herron knowingly or intentionally made a false statement in her affidavit about McCullough's drug test results.

Next, we examine McCullough's allegation that Herron's affidavit claimed that the children were being medically neglected without medical records. The TDFPS received the initial referral after the children's paternal grandmother contacted the Department about their medical condition and reported that one child had a seizure disorder and McCullough had failed to take the child to a follow-up medical appointment. In reviewing the summary judgment record, the grandmother was the primary caregiver for two of McCullough's three children, and reported characteristics of McCullough that would be objectively necessary to investigate, specifically that she was unstable and often evicted. The father of the children followed up with this

report and supported the assertion that McCullough was not taking care of the children and had refused to take them to the doctor for medically necessary appointments. In her report, Herron noted that McCullough had not taken the children to the doctor at the time of the hearing, despite previously stating her intent to do so. The summary judgment evidence does not support a finding that Herron knowingly or intentionally made a false statement in her affidavit about the child's seizure disorder or the children's medical needs.

Herron's affidavit also recounts the report received from the Houston Police Department, stating that McCullough had her baby on her lap while driving after a verbal altercation with the child's father. McCullough denies the baby was on her lap, and instead argues the child was restrained in the back seat of the car, but failed to support this assertion with an affidavit. In examining the facts known to Herron at the time, the police report and testimony from other family members support Herron's statement. The statement, even if assumed false, was immaterial to the court's finding of probable cause for medical neglect. McCullough has failed to present any evidence raising a genuine dispute of facts, and summary judgment is proper.

As detailed above, McCullough has alleged a liberty interest in family integrity and the state's interference in that interest. After reviewing the summary judgment evidence and record, McCullough has failed to adduce any facts that suggest that the procedures were constitutionally insufficient. Herron initiated contact after she received multiple reports of neglect. Herron requested an interview with McCullough. McCullough admitted that Herron requested an interview with her and that she chose to have "nothing to do with CPS." McCullough has failed to state a claim against Herron for a violation of her procedural due process rights.

No. 20-20058

*Supervisory Liability Under* Fed. R. Civ. P. *12(b)(6)*

Lastly, while Herron kept her supervisors informed of her efforts to investigate, neither Jones nor White personally investigated the allegations. In order to establish supervisor liability for constitutional violations by subordinate employees, a plaintiff must show that the supervisor acted or failed to act with deliberate indifference to constitutional rights being violated against others by their subordinates. *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018). Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We review the district court's grant of a motion to dismiss de novo. *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018).

McCullough alleged Jones and White "explicitly approved" of Herron's actions, but failed to support the conclusory allegation and bare assertions that Jones or White knew about or approved of any purportedly false statement in Herron's affidavit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009) (stating the court need not accept as true conclusory allegations). There is, for example, no adequately pleaded allegation that Jones or White ordered or were advised of the falsification of the testimony in the affidavit. *See Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997) (noting that the misconduct of a subordinate must be "conclusively linked" to the action or inaction of the supervisor). Claims that are insufficiently pleaded are properly dismissed. *Deal v. Bank of N.Y. Mellon*, 619 F. App'x 373, 374 (5th Cir. 2015). In short, as the district court correctly concluded, McCullough's complaint failed to state a § 1983 claim against White or Jones. These claims were correctly dismissed pursuant to Rule 12(b)(6) below.

III.

Lastly, McCullough argues that the district court erred in denying her motion for leave to amend her complaint. A district court's denial of a motion

15

to amend the pleadings is reviewed for abuse of discretion. *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). "[A] court should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Likewise, a district court's denial of a motion to alter or amend judgment is reviewed for abuse of discretion and need only be reasonable. *Edionwe v. Bailey*, 860 F.3d 287, 291–92 (5th Cir. 2017).

We reject McCullough's argument that the district court abused its discretion by denying her motion to alter or amend judgment. A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). It serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used *sparingly*." *Id.* (emphasis added). Such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

Additionally, while an explanation of the reasons for a denial of a motion to amend is preferred, it is not an abuse of discretion where the reasons for denial are apparent. *Mayeaux v. LA Health Serv. and Indem. Co.*, 376 F.3d 420, 426–27 (5th Cir. 2004). In the report and recommendation on the supervisors' motion to dismiss, the magistrate judge ordered that "no further amendments will be allowed as [McCullough] has amended her complaint eight times." The district court adopted the report and recommendation without opinion. In light of the history of eight amended complaints over a year, we do not believe that the district court abused its discretion in denying the appellant leave to file another amended complaint.

No. 20-20058

IV.

For the foregoing reasons, the judgment is AFFIRMED.